IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-162-FL

PATSY S. TAYLOR,                            )
                                            )
                Plaintiff/Claimant,         )
                                            )
                                            )          **MEMORANDUM AND**
                v.                          )          **RECOMMENDATION**
                                            )
MICHAEL J. ASTRUE, Commissioner of          )
Social Security,                            )
                                            )
                Defendant.                  )

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-50, DE-59] pursuant to Fed. R. Civ. P. 12(c). Claimant Patsy S. Taylor ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded [DE-61] to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 30 April 2008, alleging disability beginning 30 December 2005. (R. 13). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 15

December 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 29-59). On 22 January 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-24). On 15 May 2011, the Appeals Council granted Claimant's request for review. On 1 July 2011, the Appeals Council adopted the ALJ's findings in their entirety and denied Claimant's application. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to classify Claimant's pedal edema as a severe impairment; (2) improper credibility assessment; and (3) finding Claimant retained the residual functional capacity ("RFC") to perform past relevant work ("PRW")

3

as a receptionist.[1] Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 8, 13.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: colitis, vertigo and lumbar disc disease. *Id.* The ALJ also found Claimant had nonsevere impairments of ventral hernia, cardiomegaly, high cholesterol, gastroesophageal reflux disease and edema. (R. 16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with an inability to lift more than 20 pounds occasionally that allows ready access to a bathroom at will and accommodates a sit/stand option at will. However, Claimant is unable to perform any rapid movement from sitting to standing and she cannot respond to emergencies or bend or work around

---

[1]      Claimant raises the third assignment of error within her credibility discussion. However, this allegation implicates step four of the sequential evaluation process and the court will therefore analyze it accordingly.

[2]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

hazards. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 17). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work (R. 19).

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 60 years old and unemployed. (R. 31). Claimant has a two-year associate degree in accounting. (R. 31-33, 40). *Id.* Claimant's past work experience also includes predominantly working as a receptionist for a commercial painting company. (R. 32).

Claimant testified that she is unable to work due to swelling in her legs and feet, colitis and uncontrolled bowel movements, rectal bleeding and abdomen pain associated therewith, vertigo and back pain. (R. 34-36, 45, 50). Claimant takes multiple medications for her colitis. (R. 36). Claimant testified to having bowel movements approximately four to five times a day "[a]nd more" – a condition aggravated by her "nerves." (R. 36). Claimant subsequently testified to needing to visit the restroom two or three times in an hour. (R. 48). Claimant experiences dizziness when she lays down, bends over or gets up from a "laying down position." (R. 37, 42-43). Claimant testified her dizziness lasts "about five minutes." (R. 37). Claimant testified her back pain began in 2006. (R. 38). Claimant testified further to experiencing upper respiratory problems and symptoms thereof, including shortness of breath and a sore throat. (R. 44). Claimant also testified that she used to suffer chest pains as a result of a hiatal hernia and continues to suffer such pain but attributed her present pain to "aggravation" or "food." (R. 44-45). Claimant testified to "sometimes" experiencing back pain and stiffness in her legs when she sits. (R. 51).

Claimant cannot stand for more than 30 minutes at a time due to back pain and swelling in

5

her legs. (R. 34). Claimant initially testified that she cannot sit for more than an hour due to the need to use the restroom at unexpected times but subsequently testified that she cannot sit for even thirty minutes. (R. 34, 50). As a result of the swelling in her feet and legs, Claimant elevates her feet two to three times a day for thirty minutes at a time. (R. 35). Claimant cannot lift more than ten pounds. (R. 49). Claimant testified that her family has "take[n] up some of" the household chores with her son cooking "about every night," her daughter doing the laundry "sometimes," and her husband or daughter "mostly do[ing] the driving." (R. 47-48). Claimant is able to drive but generally does not drive more than three miles. (R. 47).

### III.   Vocational Expert's Testimony at the Administrative Hearing

Robert Brabham testified as a VE at the administrative hearing. (R. 25, 51-58). After the VE's testimony regarding Claimant's past work experience as a receptionist (R. 52), the ALJ asked whether a hypothetical individual of the same age, education and prior work experience as Claimant could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work with access to a bathroom at will, and is restricted from "performing any rapid movements from sitting to standing" and from working around hazards or bending. (R. 53). The VE testified in the affirmative. *Id.* The VE testified further that the hypothetical individual could perform Claimant's past relevant work with a limitation to light work and a sit/stand option at will. (R. 53). When asked by the ALJ whether the receptionist position would "ordinarily" or "customarily" accommodate the need to elevate one's feet "up to a foot off the floor," the VE testified in the affirmative. *Id.* Upon questioning by Claimant's counsel, the VE clarified that his testimony concerned receptionist positions as generally performed and not as Claimant actually performed her job and testified further that as long as the hypothetical individual is maintaining pace and

6

persistence, receptionist positions will accommodate a sit/stand option. (R. 54). Finally, Claimant's counsel asked whether the hypothetical could perform any jobs if she cannot lift over ten pounds, "cannot move from sit to stand without becoming dizzy," "take[s] about five minutes to get back to normal," cannot sit longer than 30 minutes without requiring a bathroom break and requires two naps a day for an hour at a time. (R. 58). The VE testified in the negative. *Id.*

## DISCUSSION

I.      **The ALJ's failure to classify Claimant's edema as a severe impairment is not reversible error.**

Claimant contends the ALJ erroneously characterized Claimant's edema as a non-severe impairment and failed to discuss this impairment in the RFC analysis. Pl.'s Mem. at 13.

In considering the severity of Claimant's impairments, the ALJ acknowledged that Claimant "has experienced some edema;" however, in light of "physical exams [which] have routinely proven her to be without evidence of such problem," *see* (R. 328, 360, 421, 424),[3] the ALJ classified Claimant's edema as a non-severe impairment. (R. 16). Indeed, the majority of records between 2005 and 2009 which discuss Claimant's edema indicate Claimant's extremities were consistently free from edema. (R. 317, 326, 332, 334, 336, 338, 340, 383, 386, 459). Nevertheless, to the extent the ALJ erred as to this finding, such error is "legally irrelevant" as the ALJ specifically found Claimant satisfied the severity requirement at step two of the sequential evaluation process. (R. 15). *See Anthony v. Astrue,* 266 Fed. Appx. 451, 457 (6th Cir. 2008) (explaining where other impairments were deemed severe, "[t]he fact that some of [claimant's] impairments were not deemed to be severe

---

[3]      Claimant cites a treatment record dated 12 December 2008 as indicative of her edema. While the record indicates Claimant is positive for edema in her lower extremities, upon physical examination, it was noted that Claimant's extremities were normal with no edema. (R. 535-36).

at step two is therefore legally irrelevant"). Rather, the issue before the court is whether the allegedly mischaracterized impairment at step two is considered in subsequent steps. *See Tarpley v. Astrue*, No. 5:08-CV-271-FL, 2009 U.S. Dist. LEXIS 45685, at *5-6, 2009 WL 1649774, at *2 (E.D.N.C. June 1, 2009) (finding no reversible error "where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps").

Claimant argues, and Defendant concedes, that the ALJ did not expressly articulate her consideration of Claimant's edema beyond step two. Pl.'s Mem. at 14; Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") at 8. Claimant argues the ALJ thus committed reversible error in light of Claimant's testimony that she must "elevate her feet several times a day because of the swelling and it prevent[s] her from sitting or standing for long periods of time." Pl.'s Mem. at 13. Defendant argues such error is harmless given (1) the ALJ's RFC finding adequately accounts for any limitation stemming from Claimant's edema and (2) the step-four determination indicates Claimant's past relevant work, both as actually performed and generally performed, accommodates such limitations. *See* Def.'s Mem. at 8-9. The court agrees.

With respect to Claimant's RFC, the ALJ specifically found Claimant was limited to performing work that accommodated a sit/stand option at will. While the ALJ cited only Claimant's back impairment as justification for the sit/stand option (R. 18), it clearly accommodates Claimant's testimony that she is unable to stand for more than 30 minutes or sit for "over an hour" as result of swelling in her feet and legs. (R. 34). Furthermore, with respect to the ALJ's step four determination, in questioning the VE as to Claimant's ability to perform her past relevant work as a receptionist, the ALJ specifically inquired whether the ability to elevate one's feet "up to a foot off the floor" – as

8

Claimant testified she was able to do while employed as a receptionist (R. 35) – "would be ordinarily or customarily accommodated in the receptionist position." (R. 53). The VE responded in the affirmative and testified further that "for the most part receptionist jobs everywhere" would accommodate for the limitations posed in the hypotheticals, including the ability to elevate one's feet. (R. 53-54). Given the impact of Claimant's edema on her ability to do work-related activities is limited to preventing her from sitting or standing for prolonged periods of time – a limitation accommodated for with a sit/stand option at will – and requires that she elevate her legs "about a foot high . . .[t]wo or three times a day" (R. 35) – a requirement allowed by her receptionist position as actually and generally performed – the ALJ's failure to expressly mention Claimant's edema after step two is clearly harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)(explaining the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)).

## II. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 1, 8. Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other

9

symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ's decision indicates she considered Claimant's numerous subjective complaints associated with her impairments, including back pain, swelling in her legs and excessive bowel movements. (R. 17). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 17). In reaching this conclusion, the ALJ noted the following: (1) Claimant's bowel movements were less frequent when Claimant adhered to her prescribed medication regimen; (2) Claimant's medication noncompliance despite being provided with medication samples and the availability of "several low cost to no cost medical providers and

10

symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ's decision indicates she considered Claimant's numerous subjective complaints associated with her impairments, including back pain, swelling in her legs and excessive bowel movements. (R. 17). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 17). In reaching this conclusion, the ALJ noted the following: (1) Claimant's bowel movements were less frequent when Claimant adhered to her prescribed medication regimen; (2) Claimant's medication noncompliance despite being provided with medication samples and the availability of "several low cost to no cost medical providers and

10

drug assistance programs;" (3) the lack of significant weight loss despite the alleged frequency of bowel movements; (4) improvement in Claimant's back pain following the administration of a lumbar epidural steroid injection; and (5) Claimant's statements made during an October 2008 interview that "she remained capable of activities of daily living including washing clothes, vacuuming, grocery shopping, cooking and attending to personal care." (R. 18). Claimant faults the ALJ's analysis, contending she either ignored evidence or improperly considered it.

First, Claimant contends the ALJ "was incorrect in stating that [Claimant's] ulcerative colitis was essentially cured by medication" as Claimant "simply did not experience the dramatic improvement with treatment claimed by the ALJ." Pl.'s Mem. at 8-9. Claimant mischaraterizes the ALJ's decision. In considering Claimant's testimony that she needed to use the restroom two to three times an hour (R. 48), the ALJ observed this allegation is not supported by the record when Claimant complies with her medications (R. 17). In particular, in July 2006, Thomas M. Sturgis, M.D., Claimant's gastroenterologist, noted that while Claimant stated she was experiencing 10-20 bowel movements per day, Claimant had been "non-compliant with her follow-up" and had not been taking her medications. (R. 17, 290). However, in May 2007, Claimant reported that her medications were helping and alleged no complaints as to bowel movements. (R. 17, 287). The ALJ noted further that in February 2008, Claimant only alleged 6-7 bowel movements per day despite not taking her medications, which was "appreciably less than she testified to at the hearing." (R. 17, 286). Despite improvement in Claimant's condition, the ALJ nevertheless found that Claimant's colitis required that she be "allowed ready access to a bathroom at will." (R. 16, 18). Accordingly, Claimant's argument that the ALJ stated Claimant was "cured" of the symptoms of colitis is clearly without merit.

With respect to her colitis, Claimant argues further that the ALJ failed to properly consider Claimant's inability to afford medications as a mitigating factor when assessing her credibility. Pl.'s Mem. at 9. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to . . . pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits . . . ." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8. The inability to afford medical treatment is a sufficient reason for medication noncompliance. *Id.*, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds).

Here, the ALJ explicitly acknowledged statements by Claimant to Dr. Sturgis that she is noncompliant with her medications due to financial difficulties, in conformity with S.S.R. 97-6p. (R. 17). However, the ALJ noted further that

> the record reveals [] when [Claimant] expressed such problems to [Dr. Sturgis], he provided her with samples of medication. Moreover, the undersigned is also aware of several low cost to no cost medical providers and drug assistance programs within the claimant's surrounding community and there is no evidence of record to indicate that the claimant ever attempted to avail herself of such services.

(R. 17). Claimant contends however that "the ALJ provided no evidence whatsoever that [Claimant's] noncompliance was unjustified [or] . . . that [she] would have been better but for her noncompliance." Pl.'s Mem. at 10. A review of the record fails to substantiate Claimant's claim. Claimant concedes that she was provided free samples by Dr. Sturgis, *see* (R. 289, 290, 377) (noting Claimant was provided samples to last for "several weeks," "at least two months" and "several

12

months" at a time), but contends first that "the samples were not always available." Pl.'s Mem. at 9. In support of this statement, Claimant relies on an 11 July 2008 treatment record by Dr. Sturgis, wherein Dr. Sturgis indicated that Claimant was directed to contact his office when she exhausted her medicine supply, stating "[h]opefully, we will have additional samples available." (R. 377).[4] This record does not support Claimant's contention that she sought but was denied free medication samples. Rather, it specifically instructs Claimant to contact Dr. Sturgis when Claimant required additional medication samples. In fact, Claimant points to no records indicating Claimant was denied medication because samples were not available. Upon independent review, the court located one record – dated 26 February 2008 – wherein Dr. Sturgis noted Claimant's remark that she was no longer taking her colitis medication "because she cannot afford it and we [Atlantic Gastroenterology, PA] have not had samples. (R. 286).

In support of her attempts "to seek out free samples," Claimant relies further on Dr. Strugis' July 2008 treatment record for the proposition that her "medical providers sometimes had to substitute other medications in place of those that she had been taking." Pl.'s Mem. at 9. The point of Claimant's argument is unclear. Nevertheless, Claimant misconstrues the July 2008 record as it specifically indicates that Claimant questioned whether pain in her "right inguinal area and perineal area" was attributed to Asacol – her colitis medication of which she was given two months' worth in April 2007, "large samples" in May 2007, and "numerous samples" in February 2008. (R. 286-87, 289, 377). It is evident this concern led to Dr. Sturgis' decision to provide Claimant "several months'

---

[4]     Claimant also cites a 12 December 2008 treatment record from Kinston Medical Specialists, PA in support of her inference that additional samples were not always available. *See* Pl.'s Mem. at 9 (citing R. 535). The December 2008 record indicates Claimant was seen for a follow-up regarding her colitis but does not mention Claimant's financial difficulties or the provision of medication samples.

13

supply of Colazal" for her colitis in lieu of Asacol. (R. 377).

In sum, to the extent Claimant relies on the alleged unavailability of medication samples as justification for her medication non-compliance, such reliance is not supported by the record with the exception of the February 2008 record. Accordingly, the ALJ correctly relied on the May 2007 treatment record indicating that with medication, which Claimant's physician provided on numerous occasions in light of Claimant's financial difficulties, Claimant's colitis improved and even without medication, the frequency of her bowel movements was far less than the need to use the bathroom two to three times an hour as claimed by Claimant during the administrative hearing. (R. 17, 48).

Claimant argues further that "there is no evidence on the record that there were sufficient free and low cost treatment in [Claimant's] area to cover her needs;" thus, the ALJ improperly discredited Claimant's credibility on such a basis. Pl.'s Mem. at 9. Claimant bears the burden to support her alleged inability to afford treatment with credible evidence. *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("Social Security Ruling 82-59 states that the claimant must show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause."). However, "the burden of proof is on the Commissioner to establish unjustified noncompliance by substantial evidence." *Dickens v. Astrue*, No. 5:10-CV-535-BO, 2011 U.S. Dist. LEXIS 84359, at *8, 2011 WL 3269422, at *3 (E.D.N.C. July 28, 2011) (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir. 1985)). Here, the court assumes without deciding that the ALJ has not met her burden to the extent the ALJ relies on the lack of evidence concerning the availability of free or low-cost medical treatment given the record was not developed as to this issue. *See Funderburk v. Astrue*, No. 2:10-CV-852-CSC, 2012 U.S. Dist. LEXIS 34733, *24-*26, 2012 WL 904682, at *8 (M.D. Ala. Mar. 15, 2012) (stating "[b]ecause the record simply

14

was not developed with regard to the availability of free or low-cost medical treatment, the ALJ's conjecture that 'there are community and church services available' is not supported by the record"); *Cf. Fink v. Barnhart*, No. 1:04-CV-266, 2006 U.S. Dist. LEXIS 96787, *14-*16, 2006 WL 5435533, at *6 (W.D.N.C. Apr. 18, 2006) (noting the ALJ met his burden of production by his "pointed and exhaustive examination of plaintiff at the hearing" concerning the availability of care from churches and free clinics and plaintiff's assistance therefrom); *but see Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding claimant's allegation that he could not afford medication not credible in part because "there [was] no evidence to suggest that he sought any treatment offered to indigents . . . ."); *Keokham v. Astrue*, No. CIV S-07-0426 EFB, 2008 U.S. Dist. LEXIS 80309, at *21, 2008 WL 4196972, at *7 (E.D. Cal. Sept. 9, 2008) (explaining the ALJ's analysis regarding claimant's non-compliance was supported by substantial evidence in part because claimant "provide[d] no documentation of any attempts to receive free or low cost medical assistance during the times in which she claims she could not afford medication"). Any error committed by the ALJ is harmless, however, as the ALJ's burden in establishing unjustified compliance has been met. As explained above, Dr. Sturgis supplied free samples to Claimant on numerous occasions with instructions to contact his office if problems arose or Claimant ran out of medications prior to her scheduled follow-up appointments. (R. 17-18, 286-87, 289-90, 377). With the exception of the February 2008 record noted by the court earlier, there are no records indicating Claimant's noncompliance was the result of the lack of available samples.

Next, Claimant contends "the ALJ erred in his credibility analysis by stating that [Claimant] had not experienced a change in body bulk as would be expected of someone suffering from such severe conditions." Pl.'s Mem. at 10. No such express finding exists in the ALJ's decision. Rather,

15

upon reviewing the decision and Claimant's reply to Defendant's memorandum, it is evident Claimant faults the ALJ for questioning Claimant's credibility regarding the frequency of her bowel movements in light of her significant weight gain. Pl.'s Reply at 2 (stating "the argument made by the ALJ and maintained by Defendant that 'one would expect' weight loss and dehydration is wholly unsupported by medical evidence"). The court finds the ALJ erroneously dismissed Claimant's testimony as to the frequency of her bowel movements on the basis of her "significant weight gain." The ALJ failed to cite a medical basis for her belief that Claimant's symptoms necessarily should lead to "significant weight loss" (R. 18) and no such comments were made by Claimant's treating physician. It appears the ALJ simply indulged her own lay view of Claimant's symptoms. *See Wiggins v. Apfel*, 29 F. Supp. 2d 486, 492 (N.D. Ill. 1998) (explaining "[i]f an ALJ indulges his [or her] layman's view of a disorder in lieu of an expert opinion, the ALJ's decision lacks evidentiary support and must be returned to the Administration for further proceedings"). Nevertheless, the court finds any error the ALJ committed in commenting on Claimant's weight gain harmless in light of other findings by the ALJ which are supported by substantial evidence and in particular, the inconsistency between Claimant's testimony and statement to Dr. Sturgis regarding the frequency of her bowel movements and improvement in Claimant's condition when taking medication. Moreover, it is evident the ALJ placed minimal weight on her perceived conflict between Claimant's testimony of frequent bathroom breaks and evidence of weight gain given the ALJ expressly incorporated into Claimant's RFC ready access to a bathroom at will.

Finally, Claimant contends that in describing Claimant's back impairment as "mild," the ALJ required "objective proof of pain." Pl.'s Mem. at 10. Claimant's argument is without merit. In discussing Claimant's back impairment, the ALJ cited a March 2009 treatment record by Barry I.

16

Katz, M.D., Claimant's neurologist, wherein Dr. Katz remarked that a recent MRI indicated Claimant had "mild stenosis at L4-5 with mild spondyloisthesis." (R. 18, 452). The ALJ noted Dr. Katz's examination findings, which included "good" range of motion of Claimant's back and neck as well as normal strength and sensation in all extremities without pathologic reflexes. *Id.* The ALJ discussed also an April 2009 record wherein Dr. Katz noted that Claimant was feeling "a lot better" following her March 2009 lumbar epidural steroid injection. (R. 18, 451). The ALJ observed also Claimant's October 2008 statements indicating her ability to perform significant daily activities. Upon review of this evidence, the ALJ properly found that while Claimant suffers from back pain, Claimant's allegations thereof are not supported by the medical records or her prior statements.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying her finding that Claimant's testimony was not fully credible, her credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

17

**III.    The ALJ improperly relied on the testimony of the vocational expert in finding Claimant could perform her past relevant work.**

Claimant contends the ALJ erred in relying on the VE's testimony regarding Claimant's past relevant work as a receptionist. Pl.'s Mem. at 11. In particular, Claimant contends "[t]he assertion that a receptionist, tasked with answering the phone and performing other administrative tasks, can take many unscheduled breaks throughout the day is spurious and is in no way supported by the DOT." *Id.* That is, Claimant faults the ALJ for failing to identify and resolve conflicts between the VE's testimony and the DOT as required pursuant to Social Security Ruling 00-4p.

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of claimant's past relevant work ("PRW") and then determines whether claimant's impairment(s) prevent claimant from performing such work. 20 C.F.R. § 404.1520(e)(f). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 SSR LEXIS 27, at *6, 1982 WL 31386, at *3. In determining a claimant's ability to do PRW, the ALJ must consider the following:

1.    the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
2.    medical evidence establishing how the impairment[s] limit[] [his or her] ability to meet the physical demands and mental requirements of such work; and
3.    in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found "not disabled" if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207; *see also* S.S.R. 82-61, 1982 SSR LEXIS 31, at *4, 1982 WL 31387, at *2.

18

Here, the ALJ found Claimant capable of performing her past relevant work as a receptionist "as actually and generally performed based upon the testimony of the vocational expert," who testified that a receptionist position would allow for the limitations posed by the ALJ, including ready access to a bathroom at will. (R. 19, 53-54). However, the ALJ did not ask the VE whether his testimony was consistent with the DOT. *See* S.S.R. 00-4p, 2000 SSR LEXIS 8, at \*5, 2000 WL 1898704, at \*2 (explaining the ALJ must "inquire, on the record, as to whether or not" the "[o]ccupational evidence provided by a VE" is "consistent with the occupational information supplied by the DOT"). Defendant suggests the ALJ's failure to comply with S.S.R. 00-4p is harmless because there is no objective medical evidence that substantiates Claimant's testimony regarding her need to use the restroom two to three times per hour. Def.'s Mem. at 15. Defendant also relies on unpublished cases decided by the Fourth Circuit wherein the court found a limitation of ready access to bathrooms did not preclude the claimants from working. *Id.* (citing *Bergen v. Bowen*, No. 88-1343, 1989 WL 90515, at \* (4th Cir. Aug. 3, 1989) (affirming ALJ's decision finding claimant who "required 10 to 11 trips to the bathroom each day" as a result of chronic diarrhea could perform other work in the economy based on VE testimony) and *Rogers v. Barnhart*, 216 Fed. Appx. 345 (4th Cir. 2007) (affirming ALJ's decision finding claimant who required a bathroom break every 30 minutes as a result of chronic diarrhea could perform his past relevant work based on VE testimony)).

The court finds Defendant's reliance on *Bergen* and *Rogers* misplaced. As to *Bergen*, it was decided prior to the promulgation of S.S.R. 00-4p and thus the ALJ was not required to inquire as to the consistency of the VE's testimony with that of the DOT. Second, in *Rogers*, the court relied specifically on the VE's testimony that the claimant could perform his actual past relevant work as

19

a self-employed machine shop operator because it "could accommodate his routine," and in particular, the need to use the restroom every thirty minutes. *Rogers*, 216 Fed. Appx. at 347-48. The VE testified further, however, that the claimant could not perform his past relevant work as a machinist "if he were in the employ of another [because] . . . no employer would hire a machinist who would need to leave his post to go to the bathroom every half hour." *Id.* at 347.

While the court finds the ALJ's credibility determination with respect to Claimant's allegations of excessive bathroom breaks supported by substantial evidence, the ALJ nevertheless failed to address the VE's testimony that a person needing to take "an excessive number of unscheduled [bathroom] breaks" has "the potential to be problematic." (R. 56). Given the ALJ made no findings regarding to what extent Claimant required unscheduled bathroom breaks, nor question the VE as to his definition of "excessive," there is simply no way to conclude, in light of the VE's testimony, that the ALJ's step-four finding is supported by substantial evidence. *See Green v. Astrue*, No. 3:09–CV–331, 2010 U.S. Dist. LEXIS 73129, at *14, 2010 WL 2901765, at *5 (E.D. Tenn. July 2, 2010) (explaining where an ALJ finds a claimant "has an impairment that requires her to have 'ready access to a bathroom' and the freedom to use it 'as needed,' an ALJ should make a specific finding concerning the frequency and duration of [the claimant]'s bathroom usage") (citation omitted); *see also Davis v. Comm'r of Soc. Sec.*, No. 2:10-CV-30, 2011 U.S. Dist. LEXIS 10594, at *3, 2011 WL 442118, at *1 (N.D. W. Va. Feb. 2, 2011) (holding where the ALJ included in claimant's RFC "a required accommodation of placing claimant close to the bathroom," the ALJ erred in failing to include in the RFC "specific findings regarding the frequency and duration of plaintiff's need for the bathroom"). Accordingly, the court finds the ALJ committed reversible error in relying on the VE's testimony because the ALJ failed to (1) identify the frequency of Claimant's

20

need for restroom breaks and how that frequency impacted Claimant's ability to work in the hypothetical posed to the VE and (2) ask the VE whether his testimony concerning Claimant's limitation of "ready access to a bathroom at will" conflicted with the DOT.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-50] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-59] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 1st day of August, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

21